Opinion.

# Richmond.

Durbin, Assignee, v. Roanoke Building Co. and Others.

January 16, 1908.

1. Deeds—*Description—Street as Boundary—Extent of Grant.*—If the owner of a city lot, which in fact is bounded by a street, conveys the lot without mentioning the street as one of its boundaries, and without manifesting any intention to reserve the street, the legal effect is to invest the grantee with title, subject to the right of way, to the center of the street as effectually as if that boundary had been expressly called for.

Appeal from a decree of the Corporation Court of the city of Roanoke. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Scott, Attizer & Watts,* for the appellant.

*Hart & Hart* and *Lucian H. Cocke,* for the appellees.

Whittle, J., delivered the opinion of the court.

The object of this suit is to subject one-half of that portion of a strip of ground fifty feet wide, formerly designated as Walnut street, in the city of Roanoke, lying continguous to the southern boundary of lot No. 1, conveyed by the Home Building

and Conveyance Company to the Roanoke Building Company, to the alleged lien of appellant's judgment.

The devolution of title to lot No. 1 is accurately and succinctly set out in the brief of counsel for the appellees as follows: "In October, 1888, the Roanoke Land and Improvement Company conveyed a tract of land in Roanoke city to the Home Building and Conveyance Company, the southern boundary being described as running with Walnut street N. 67° 15′ W. 168.8 feet to Marion street. On the thirteenth day of May, 1890, the Home Building and Conveyance Company conveyed the land by the same description to the Roanoke Building Company. The Roanoke Building Company sub-divided the land into lots, and on the third day of February, 1891, conveyed that one of the lots lying furtherest south and abutting on Walnut street, to Joseph Ellis, the southern boundary of the lot being given as N. 67° 16′ W. 156.65 feet, or practically that given in the deeds from the Roanoke Land and Improvement Company to the Home Building and Conveyance Company, and from that company to the Roanoke Building Company (the discrepancy in the length of the line is attributed to cutting off an alley from the side of the lot); but the deed does not state that the line runs with Walnut street. The lot conveyed by this deed is further described as lot No. 1 on a map in the clerk's office of the corporation court of the city of Roanoke."

It is admitted that the first two deeds invested the respective grantees, successively, with one-half of Walnut street, subject to the easement of the right of way; but the appellant denies that such was the operation of the deed from the Roanoke Building Company to Ellis, that deed not specifically calling for Walnut street as the southern boundary of lot No. 1.

Durbin's judgment was recovered against the Roanoke Building Company at the June term, 1893, more than two years after the conveyance of the lot to Ellis; and it is fair to assume that the debt, upon which the judgment is founded, was not in

existence at that time, since it bears interest from a subsequent date. This suit to enforce the judgment was brought July 16, 1904, nearly fourteen years after the title to the lot had passed out of the judgment debtor. It is also admitted that the appellee, Mrs. Bachrach, the alienee of Ellis, has erected a residence, located in part on the strip of land in dispute, at a cost of $4,000.

It appears (but at what time the record does not affirmatively disclose) that the location of Walnut street, as originally designated, was changed so as to run in a more southerly direction; the effect of the change being to interpose a small triangular lot between lot No. 1 and the line of the new street. The lot thus created was purchased by Ellis from the Roanoke Land and Improvement Company, February 14, 1891. The location of Walnut street having been once established, in the absence of evidence to the contrary, we must presume that it remained unchanged at the date of Ellis' purchase. The appellant, however, does not attach importance to that circumstance, but rests his right to recover "upon the fact that the street is not called for or mentioned in the deed."

We think it is clear that the conveyance from the Roanoke Building Company to Ellis is coextensive with the calls of the second clause of the deed from the Home Building and Conveyance Company to the Roanoke Building Company, and the southern line of lot No. 1 coincident with Walnut street; and that the legal effect of the deed to Ellis was, to invest him with title, subject to the right of way, to the center of the street, as effectually as if that boundary had been expressly called for.

The general rule is stated in Malone on Real Property Trials, 254, as follows: "The authorities, both in England and America, uniformly agree to the legal proposition, that 'a person holding lands bounded upon a highway is held *prima facie* to own to the center of the road.' This presumption is based on grounds of public convenience, and to prevent disputes as to the precise boundaries of property; and it is supposed that when the road

was originally formed, the proprietor on either side contributed a portion of his land for the purpose."

This doctrine has uniformly received the sanction of this court, the latest expression on the subject being found in *Schwalm* v. *Beardsley,* 106 Va. 407, 56 S. E. 135.

In Tyler's Law of Boundaries, 127, after laying down the general doctrine where the conveyance calls for a highway as a boundary, the learned author observes: "Indeed, it has been held by high authority that when land is sold bordering on a highway, the mere fact that it is not so described in the deed will not vary the construction. The grantee takes the fee to the middle of the highway, on the line of which the land is situated." Citing *Gear* v. *Barnum,* 37 Conn. 229; *Stark* v. *Coffin,* 105 Mass. R. 328; *Howsville* v. *Lander,* 8 Bush (Ky.) 679.

In the first-named case, the rule is stated thus: "It being established that the land is in fact bounded upon the highway, the mere fact that it is not so described in the deed will not vary the construction. In either case, the presumption that it was not the intention of the grantor to withhold his interest in the road to the middle of it, after parting with all his right to the adjoining land, will be the same. Unless such intention clearly appears, the presumption applies."

It may be remarked in this case, as was said in that: "We see nothing in the language of the deed, or in the situation and circumstances of the property conveyed, to warrant the inference that any such intention existed."

If it were permissible to invoke the interpretation placed upon the deed by the parties, it would only tend to strengthen our conclusion. Ellis and his alienee have been suffered to occupy the strip of land all these years, and to erect valuable improvements thereon, without a suggestion of ownership on the part of the Roanoke Building Company, so far as the record discloses.

For these reasons, we are of opinion that the decree appealed from is plainly right, and it must be affirmed.

*Affirmed.*