# Richmond

## Minton W. Talbot v. Massachusetts Mutual Life Insurance Company.

April 21, 1941.

Record No. 2337.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Jas. G. Martin & Son,* for the appellant.

*William L. Parker,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Appellee, complainant in the lower court, instituted a suit in equity against appellant, for the purpose, as shown by the bill of complaint, of settling a controversy existing between the parties litigant, with respect to the ownership of a tract or parcel of valuable land situated in the city of Norfolk, and described in a certain deed from the city of Norfolk to appellant as a strip of land ten feet in width and one hundred and seventeen feet, more or less, in length. The material allegations of the bill of complaint are as follows: By deed dated August 26, 1930, appellant conveyed to E. B. Woodruff, trustee, a tract of land containing two hundred acres of land, more or less, situated in the city of Norfolk, and bounded "on the east in part by the western line of Granby street as now extended, and by the right of way of the electric street car line, formerly known as the Norfolk and Ocean View Railway Company, and now operated by Virginia Electric and Power Company";

the deed of trust was given to secure an indebtedness owed by appellant to appellee; appellant defaulted in the payment of the debt and upon a sale by the trustee of the property conveyed, appellee became the purchaser thereof.

The bill of complaint further alleges that appellant acquired the property in dispute by devise from his father, William H. Talbot, in the year 1884; that on or about September 18, 1898, Tanner's Creek Drawbridge Company instituted condemnation proceedings in the Circuit Court of Norfolk county against appellant, to acquire a right of way for turnpike purposes over a portion of said land; that the right of way so acquired was over a strip of land thirty feet in width lying between the western boundary of a road then operated as a turnpike by the Tanner's Creek Drawbridge Company and the eastern line of the property of appellant; that the interest so acquired by the Company was an easement of passage only; that by an Act of the General Assembly of Virginia, approved February 17, 1898, Tanner's Creek Drawbridge Company was authorized to sell or lease along its turnpike "a right of way to any company for the operation of an electric railroad * * *"; that pursuant to the power granted by the Act of Assembly, the right of way so acquired by Tanner's Creek Drawbridge Company passed by conveyance to the Virginia Electric and Power Company for use as a right of way and subsequently was conveyed by it to the city of Norfolk for use as a street; that by deed dated March 2, 1933, the city of Norfolk conveyed to appellant all its right, title and interest in and to the land in controversy. It is by virtue of this deed, executed after the conveyance to Woodruff, trustee, that appellant asserts fee simple title to the land.

The contention of appellee is that the legal effect of the deed from the city of Norfolk to appellant was not to convey a fee simple title but merely to extinguish an easement in, or right of way over, the one hundred and

seventeen feet of land, and that by virtue of the deed from Woodruff, trustee, appellee acquired the fee simple title to the land, subject only to the easement of passage over the same acquired by Tanner's Creek Drawbridge Company.

By a final decree the chancellor adjudged that the tract of land in controversy at the time of the conveyance from appellant to E. B. Woodruff, trustee, was subject to a right of way for turnpike purposes acquired in the condemnation proceedings instituted by Tanner's Creek Drawbridge Company; that said right of way passed by *mesne* conveyances to the city of Norfolk; that by the deed dated March 2, 1933, the city of Norfolk only granted and released to the appellant, who was then the owner of the fee simple interest in the right of way, all right, title and interest in and to the right of way which had been acquired by Tanner's Creek Drawbridge Company; that the effect of the deed was to extinguish the easement; and that, therefore, the fee simple interest in the strip of land ten feet in width and one hundred and seventeen feet in length vested in appellee by virtue of the conveyance from Woodruff, trustee.

From that decree an appeal was allowed.

The facts alleged in the bill of complaint are conceded. The questions for determination are, therefore, questions of law.

First: What interest was acquired in the property of appellant by virtue of the condemnation proceedings instituted by Tanner's Creek Drawbridge Company?

As originally chartered, this company possessed only the power to construct a bridge "with a suitable draw across Tanner's Creek in the county of Norfolk, from the lands of William H. Talbot on the north, to the lands of Michael Hendren on the south, or from and to such other point or points in the vicinity of such lands as may be deemed suitable". Acts 1865, pp. 26, 27. This charter provision obtained until the year 1898, when, by an Act of the General Assembly (Acts 1898, pp. 425,

426), the charter of the company was amended and the company was granted the authority to condemn land for the purpose of constructing and maintaining a turnpike. This charter amendment is as follows:

"And the said Company is hereby authorized to acquire by purchase or condemnation, according to law, and to hold all land necessary for the purpose of its incorporation; to widen its present road where necessary, not to exceed sixty feet in width, and to construct, establish and maintain a *turnpike* not exceeding sixty feet in width, to extend and continue northwardly from the northern terminus of its present toll road to a point at or near Ocean View, in the County of Norfolk, Virginia, and to establish and maintain tollgates, stations, and to collect tolls and charges thereon, according to law; *and also to sell or lease along its turnpike,* a right of way to any company or companies, for the operation of an electric railroad, a bicycle path, or other similar enterprise."

It was by virtue of this amendment to its charter that the Company acquired the property herein involved.

In our opinion, when Tanner's Creek Drawbridge Company acquired this property for use as a turnpike, it acquired an easement of passage only, and the fee remained in appellant. This conclusion is based upon the decision of this court in *Roanoke City* v. *Berkowitz,* 80 Va. 616, which involved a construction of the applicable statute, now section 4369 of the Code. Lewis, P., speaking for the court, said:

"And this brings us to the consideration of the next assignment of error, which is, that the hustings court erred in holding that in condemning the land, the fee, and not a mere easement, must be taken and paid for.

"The decision of this question must be governed by the terms of the statute under which the proceeding was conducted. The right of eminent domain, which is defined to be the right on the part of the state to take or control the use of private property for the

public benefit when public necessity demands it, is inherent in every sovereignty, and is inseparable from sovereignty, unless denied to it by its fundamental law. Vattel, book 1, ch. 20; Cooley's Const. Lim. 523; *Kohl* v. *United States,* 91 U. S. 367. The right, however, must be exercised upon such terms, and in such manner, and for such *public uses* as the legislature may direct. 2 Kent's Com., 340; 2 Min. Insts. 22, and cases cited. The whole subject, from its nature, belongs exclusively to the legislative department of the government, subject to the limitation imposed by the constitution in respect to just compensation for the property taken; and, hence, all questions affecting the rights of the parties in a case like this, must be determined not with reference to the decisions of the courts of other states, based on the peculiar statutes of those states, but according to the provisions of our own statutes. Those provisions, so far as they relate to the question now before us, are plain and unambiguous. They are as follows: 'The sum so ascertained (by the commissioners) to be a just compensation, may be paid to the persons entitled thereto, or into court. Upon such payment, the title to that part of the land for which such compensation is allowed, shall be absolutely vested in the company, county or town *in fee simple,* except in the case of a turnpike company, where a sufficient right of way only for the purpose of such company shall be vested.' Code 1873, ch. 56, sec. 11. It is difficult to see how language could be plainer, or less liable to misconstruction. The requirement is imperative that the fee shall be vested, except in the single case of a turnpike company, where an *easement* only is acquired; and the exception proves the universality of the rule which was intended to be prescribed.''

It being thus ascertained that the fee remained in appellant at the date of the condemnation proceedings, the second question is: What interest did appellant convey to Woodruff, trustee, by the deed dated August 26, 1930?

In this conveyance, as heretofore stated, the property

was described as bounded on the east "by the right of way of the electric street car line * * * ".

In *Richmond* v. *Thompson's Heirs,* 116 Va. 178, 81 S. E. 105, Judge Buchanan said:

■ "The general rule is that a conveyance of land bounded on a highway or private stream includes the soil to the centre of the highway or the centre of the stream, provided the grantor at the time owned to the centre, and there are no words or specific description to show a contrary intent. *Durbin* v. *Roanoke Building Co.,* 107 Va. 753, 60 S. E. 86; *Schwalm* v. *Beardsley,* 106 Va. 407, 409, 410, 56 S. E. 135 and authorities cited; *Hodges* v. *S. A. R. R. Co.,* 88 Va. 663, 665-669, 14 S. E. 380. And where the land conveyed is bounded on a private way the same rule of construction obtains, though perhaps not so universally. 2 Devlin on Real Estate, sec. 1225-h."

■ The reason for the rule is plainly exemplified in the case at bar. Here, we have a situation extremely detrimental to the appellee, if appellant is the owner of the ten-foot strip which blocks its approach to the highway. We are unable to perceive why the general rule is not applicable to a situation where the land conveyed is bounded by the right of way of an electric railway which does not own the fee, but is merely the grantee of an easement of passage over the land conveyed.

Upon the whole case, the court is of opinion that there is no error in the decree complained of, and that it must be in all respects affirmed.

*Affirmed.*