## Richmond

JACK R. TURNEY, JR., ET AL. v. GEORGE SMITH, JR., ET AL.

April 23, 1973.

Record No. 8057.

Present, All the Justices.

*Henry C. Mackall (Douglass S. Mackall, III; Mackall, Mackall & Cremins*, on brief), for appellants.

*Richard E. Blair (Robert C. Watson*, on brief), for appellees.

Per Curiam.

The court below decreed specific performance of a contract between appellants, Jack R. Turney, Jr. and Rachel H. Turney (sellers), and appellees, George Smith, Jr. and Dora P. Smith (buyers), for the sale of real property in Fairfax County for $65,000. This decree, entered May 1, 1969, was affirmed with modification on appeal by the Turneys. *Turney* v. *Smith*, 211 Va. 810, 180 S. E. 2d 509 (April 26, 1971). Since affirmation the parties have engaged in a protracted controversy involving an adjustment of the purchase price.

Each claimed the other delayed and frustrated the closing, while the trial judge observed that "there has been a lot of foot dragging on both your parts". On December 17, 1971 the lower court decreed that the Smiths pay the Turneys $60,156.08, and over the objection of the sellers the transaction was closed on that basis. We granted the Turneys an appeal to this final decree.

We find no merit in the appellants' assignment that the trial court did not have jurisdiction to amend the provisions of its final decree of May 1, 1969. This decree spoke as of its date. It was affirmed by this court some two years later and the positions of the parties had not remained static during that time. It was the duty of the trial court to make adjustment for matters occurring during the pendency of the appeal, if indicated, provided such adjustment was not inconsistent with the opinion and direction of this court. *See Riggsby v. Tritton*, 147 Va. 1084, 133 S. E. 580 (1926); *Francis v. McLemore*, 141 Va. 296, 127 S. E. 305 (1925).

In its decree of December 17, 1971 the trial court determined that settlement be made as of May 1, 1969 and proceeded to adjust the claims of the parties arising between that date and November 1, 1971. We summarize its computations as follows:

| | | |
|---|---:|---:|
| Cash balance due sellers had transaction been settled May 1, 1969 | | $16,577.66 |
| Interest thereon May 1, 1969 to Nov. 1, 1971 | | 2,487.40 |
| 1969-70-71 taxes paid by sellers | | 2,859.92 |
| Insurance paid by sellers | | 259.00 |
| Balance due on deed of trust as of May 1, 1969 | | 47,166.13 |
| Deposit by buyers with settlement attorney | | 1,000.00 |
| Gross amount due sellers | | $70,350.11 |
| | | |
| Rent (5/1/69-11/1/71) | $ 9,550.00 | |
| "Drape allowance per k" | 500.00 | |
| Court costs | 144.03 | |
| Total charged to sellers | $10,194.03 | $10,194.03 |
| Balance owed to sellers | | $60,156.08 |

The Turneys were also directed to discharge the existing deed of trust and all taxes through December 31, 1971.

Although the decree required the Turneys to account for rents no credit was allowed them for expenses incurred incident to the rental,

such as commissions to rental agent, repairs to the furnace, septic system, plumbing and appliances and like items claimed by sellers totaling $2,701.25. Neither did the trial court make any allowance for interest paid by the sellers on the deed of trust debt during the adjustment period. The Smiths say the contract required the sellers to warrant that all appliances, heating, plumbing, electrical, well and septic systems would be in good working order at settlement, and that the repairs claimed by sellers were necessary to fulfill the agreement. They add that the items in controversy are offset by depreciation of the carpeting, appliances and other fixtures, and claim other damages, losses and expenses attributable to the actions of the Turneys.

The principle of law which controls here was stated in 11 *Williston on Contracts*, §1430 (3rd ed. 1968) at 876-877 as follows:

"So, as an adjunct to specific performance, the purchaser is ordinarily allowed the rents and profits of the land or its rental value, and the vendor interest on the purchase money during the period between the day fixed by the contract and the day when conveyance is made; but where interest exceeds the rents and profits and the delay was due to the vendor's fault, he will be allowed to retain the rents and profits, but allowed no interest." (Footnotes omitted)

*See Sale, et al.* v. *Swann,* 138 Va. 198, 120 S. E. 870 (1924); *White* v. *Dobson,* 58 Va. (17 Gratt.) 262 (1867); *Mitchell* v. *Mutch,* 189 Iowa 1150, 179 N. W. 440 (1920); *Sladkin* v. *Greene,* 359 Pa. 528, 59 A. 2d 105 (1948); *Fleming* v. *O'Donohue,* 306 Ill. 595, 138 N. E. 183 (1923); *Sutherland on Damages,* §588 (1916).

Following our decision in *Turney* v. *Smith, supra,* the Smiths had an election. They could pay the Turneys the contract purchase price of $65,000 and receive a deed. Or, being entitled to the benefit of their purchase, they could elect to settle as of the time the conveyance should have been made and require an accounting of all rents and profits received during pendency of the litigation. In the latter event they became liable to the sellers for interest on the purchase price. They elected that settlement be made as of May 1, 1969, thereby requiring the court to place the parties, as nearly as possible, in the position they would have occupied had settlement been effected on that day.

The adjustments made by the court below were based on the pleadings, exhibits and representations of counsel in argument. No evi-

dence was taken. Although the final decree recites that counsel for the Smiths stipulated the facts alleged in the Turneys' motion for reconsideration, we find little area of agreement in the briefs of the parties.

We adopt the adjustment period used by the trial court: May 1, 1969 to November 1, 1971. The deed of trust debt which figured in the transaction at the outset can be ignored, for it was not assumed by the buyers as was contemplated by the contract. We cannot say from the record before us that the trial court erred in refusing to allow the Turneys the $2,701.25, or some part thereof, claimed as a credit for repairs, or in charging them with the "drape allowance" and court costs. On the other hand, it should have allowed the Turneys to recover interest on the purchase price of $65,000 for the adjustment period, since the Smiths claimed the rents from the property during the same period.

The Turneys say they should not be held to account for the several months of 1971 in which the property was not rented because they had dismissed their tenants in order to deliver possession to the Smiths, but the trial court found that they, as well as the Smiths, were responsible for the delay in making settlement. Having decided that the buyers should pay interest on the purchase money for the 30-month adjustment period, it is equitable that the sellers should be charged with the fair rental value of the property ($400 a month) involved for the same period. The sellers were properly allowed by the trial court to offset against the rent the taxes and fire insurance premiums paid by them.

We conclude that the purchase price owed by the Smiths to the Turneys on May 1, 1969 can be equitably adjusted as follows:

| | |
|---|---:|
| Purchase price | $65,000.00 |
| Interest at 6% from 5/1/69 to 11/1/71 | 9,750.00 |
| Reimbursement to sellers for taxes paid | 2,859.92 |
| Reimbursement to sellers for insurance paid | 259.00 |
| Charged to buyers | $77,868.92 |
| | |
| Rent at $400 a month 5/1/69 to 11/1/71 | $12,000.00 |
| "Drape allowance per k" | 500.00 |
| Court costs | 144.03 |
| Charged to sellers | $12,644.03 |

Accordingly, the adjusted amount due the Turneys by the Smiths was $65,224.89. The amount paid pursuant to the decree of the lower court having been only $60,156.08, the decree is modified to reflect the correct amount. Judgment will be entered here in favor of Jack R. Turney, Jr. and Rachel H. Turney against George Smith, Jr. and Dora P. Smith in the amount of $5,068.81.

*Modified and final judgment.*